UNITED STATES COURT OF APPEALS
FOR THE FIRST CIRCUIT

NO. 13-2437

**CRYSTAL LITZ, and all others similarly situated**
**Plaintiffs/Appellants,**

**v.**

**THE SAINT CONSULTING GROUP, INC., P. MICHAEL SAINT and PATRICK FOX**
**Defendants/Appellees.**

Appeal from a Judgment in the United States District Court
for the District of Massachusetts

# SUR-REPLY BRIEF OF APPELLEES

Robert P. Joy
Court of Appeals Bar No. 17566
Daniel S. Field
Court of Appeals Bar No. 120370
Sean P. O'Connor
Court of Appeals Bar No. 1137121
MORGAN, BROWN & JOY, LLP
200 State Street, 11th Floor
Boston, MA 02109-2605
(617) 523-6666
rpjoy@morganbrown.com
dfield@morganbrown.com
soconnor@morganbrown.com

Dated: September 16, 2014

Attorneys for Appellees

# TABLE OF CONTENTS

ARGUMENT ..... 1

**I.** The District Court Properly Ruled That Defendants Were Entitled To Summary Judgment Because Plaintiffs Were Highly Compensated Employees Exempt From The FLSA's Overtime Provisions ..... 1

A. The Undisputed Evidence Demonstrates That Plaintiffs Were Always Entitled To And Paid Their Guaranteed Minimum Weekly Salaries ..... 1

B. The Reasonable Relationship Test Does Not Apply To Employees, Like Plaintiffs, Covered By The Highly Compensated Exemption ..... 5

**II.** The District Court Did Not Abuse Its Discretion In Denying Litz's Motion For Reconsideration ..... 7

A. *Dow v. Casale* Supports The District Court's Conclusion That Litz Still Lacked Sufficient Contacts To Maintain A Massachusetts State Law Claim Following *Taylor v. Eastern Connection Operating, Inc.* ..... 7

B. The District Court's Prior Decision Regarding Litz's Massachusetts Contacts Remains Valid Because *Taylor* Was Not An Intervening Change In Law Affecting The Standard For That Analysis ..... 11

CONCLUSION ..... 12

# TABLE OF AUTHORITIES

**Cases**

*Aaron v. City of Wichita, Kan.*, 54 F.3d 652, 658 (10th Cir. 1995) ..........................5

*Anani v. CVS RX Services, Inc.*, 730 F.3d 146, 148 (2nd Cir. 2013) ...................2, 6

*Bushkin Assocs., Inc. v. Raytheon Co.*, 393 Mass. 622, 631-32 (1985) ..................11

*Cavanaugh v. Southern California Permanente Medical Group, Inc.*,
583 F. Supp. 2d 1109, 1135-38 (C.D. Cal. 2008) .................................................5

*Coniff v. Vermont*, No. 2:10–cv–32, 2013 WL 5429428, *2 (D. Vt. 2013) .............5

*Dow v. Casale*, 83 Mass. App. Ct. 751 (2013) ............................................. 7-10, 12

*Hodas v. Morin*, 442 Mass. 544, 549 (2004) .........................................................11

*Kulish v. Rite Aid Corp.*, No. 11–3178, 2012 WL 6532414, *3 (D. Md. 2012) .......5

*Johnson v. WellPoint, Inc.*,
No. 1:06-CV-2430, 2009 WL 8753325, *13 (N.D. Ga. 2009)..............................5

*Rooney v. Town of Groton*, 577 F. Supp. 2d 513, 524 (D. Mass. 2008) ...................5

*Spradling v. City of Tulsa, Okl.*, 95 F.3d 1492, 1500 (10th Cir. 1996) .....................5

*Taylor v. Eastern Connection Operating, Inc.*, 465 Mass. 191 (2013) ......7-8, 10-12

**Statutes**

G.L. c. 151........................................................................................................ 7, 11

G.L. c. 151, §1A.........................................................................................................7

**Rules**

Fed. R. App. P. 39 ....................................................................................................12

**Regulations**

29 C.F.R. § 541.601 ...................................................................................................6

29 C.F.R. § 541.604 ................................................................................................5, 6

# ARGUMENT

## I. The District Court Properly Ruled That Defendants Were Entitled To Summary Judgment Because Plaintiffs Were Highly Compensated Employees Exempt From The FLSA's Overtime Provisions

### A. The Undisputed Evidence Demonstrates That Plaintiffs Were Always Entitled To And Paid Their Guaranteed Minimum Weekly Salaries

Through Section I.A of their Reply, Crystal Litz ("Litz") and Amanda Payne ("Payne") (collectively "Plaintiffs") have essentially reasserted their same arguments from Section I.B of their initial Brief. (pp. 19-27). The Saint Consulting Group, Inc. ("TSCG"), P. Michael Saint ("Saint") and Patrick Fox ("Fox") (collectively "Defendants") fully responded to each of these arguments through Section I.D.iv. of their initial Brief (pp. 23-30), explaining how they were meritless and without any evidentiary support.[1] Yet, instead of addressing Defendants' arguments, Plaintiffs have chosen to simply reassert their unfounded claim that Project Managers were not always paid their $1,000 guaranteed minimum weekly salaries. However, the undisputed evidence in the record demonstrates otherwise.

---

[1] For example, Plaintiffs raised the same arguments regarding the offer letters on page 25 of their Brief, and Defendants explained their irrelevance on pages 27-28 of their Brief. Plaintiffs also raised the same issues regarding paystubs on pages 25-26 of their Brief, and Defendants explained on pages 25-27 of their Brief how the paystubs did not support Plaintiffs' argument. Plaintiffs similarly raised the same issues concerning statements from Saint and Fox; however Defendants explained on page 29 of their Brief how each of their statements is wholly consistent with the Project Manager compensation structure and how Plaintiffs have taken these statements out of context while completely ignoring Saint's and Fox's explanations about what they were discussing.

Initially, Plaintiffs have admitted that Project Managers were always entitled to at least their guaranteed minimum salaries of $1,000 per week regardless of the number of hours they worked or billed.[2] (*See* Appellants' Brief at p. 6). It is also undisputed that their compensation was not subject to deductions. (SF. 206, ¶ 31). It is similarly undisputed that the record does not contain any evidence of any Project Managers, including Plaintiffs, ever failing to receive their $1,000 guaranteed minimum weekly salary. (SF. 208-10, ¶¶ 41-44, 51-55).[3] To support their claim that they were not paid on a salary basis, Plaintiffs have now argued that their final weekly compensation did not include a separate component

---

[2] Through their Reply, Plaintiffs cite to a portion of an email exchange to suggest that Payne was confused about whether she would receive her guaranteed weekly salary. (p. 5). However, in doing so, they conveniently omit the fact that Fox responded to Payne's question in by explicitly telling her: "You will always get at least the stipend amount." (A. 164). Similarly, Plaintiffs point to a message from Fox and suggest, without any factual or legal support, that salaried employees would never be required to use vacation time if they refuse to work – such as Project Managers refusing to work on certain projects. (Reply at pp. 6-8). Initially, this suggestion is absurd because salaried employees, like all other employees, are routinely required to use paid time off if they don't want to work for a day. Regardless, Fox explained that he was addressing the fact that when Project Managers are offered billable hours, but refuse them, their vacation time is debited – though they would still always be paid their $1,000 guaranteed minimum weekly salaries. (SF. 215, ¶¶ 96-97).

[3] As Defendants have explained, a guaranteed minimum salary can constitute compensation paid on a salary basis if the guaranteed compensation is not subject to deduction – as is precisely the case here. (Defendants' Brief at p. 24); *see also* *Anani v. CVS RX Services, Inc.*, 730 F.3d 146, 148 (2nd Cir. 2013) ("The requirements of C.F.R. §§ 541.600 and 541.602 are thus satisfied with regard to the minimum guaranteed weekly amount being paid 'on a salary basis.'").

specifically identified as representing their guaranteed weekly salaries. This argument is both factually and legally unfounded.[4]

The undisputed evidence in the record demonstrates that Plaintiffs' guaranteed weekly salaries were always included in the computation of their final paychecks. As Plaintiffs admit, TSCG performed its own internal payroll calculations, which included Project Managers' $1,000 guaranteed minimum weekly salaries. (SF. 213-14, ¶¶ 83, 85-87). It then provided a third-party payroll vendor with information about the Project Managers' gross weekly compensation which the vendor used to process the final employee paychecks. (*Id*.).

Paul Salvucci, TSCG's Chief Financial Officer, explained that TSCG used a payroll spreadsheet to perform its internal payroll calculations which accounted for the $1,000 guaranteed weekly salaries:

> Q. Is there a column that indicates the stipend for the project managers on that spreadsheet? A. There's a column that would be

---

[4] Through their Reply, Plaintiffs also repeatedly mischaracterize Project Managers' actual compensation structure, failing to acknowledge that they were only entitled to incentive bonus compensation for the number of hours they billed beyond a certain threshold in a week. (SF. 205-06, ¶¶ 26-28; A. 241-45, 250-55, 262-64, 274-77, 287-97, 354-56, 359-60, 364, 371-72, 374-78, 408-10, 457). For example, if Litz had an hourly incentive bonus rate of $40 per billable hour and billed 100 hours in a week, she would receive her $1,000 weekly guaranteed minimum salary plus an additional $3,000 incentive bonus compensation for the 75 hours beyond her 25-hour weekly threshold, amounting to a total compensation of $4,000 for that week. Plaintiffs' suggestion that Litz should have received $4,000 in incentive bonus compensation plus an additional $1,000 for her guaranteed salary is simply wrong and entirely unsupported by anything in the record.

> used for all base pays in the company …. So project managers, it would be a thousand dollars on that schedule."

(A. 427). Fox similarly explained that TSCG's internal payroll spreadsheet always accounted for the guaranteed weekly salaries as part of the calculation for gross weekly compensation:

> Q. All right. And the column that lists the stipend, what would we expect to see in that column? A. A thousand dollars. Q. For each project manager? A. Each project manager every week always. Q. Does it literally say a thousand? A. Yes.

(A. 315). Thus, TSCG's payroll processing always incorporated Project Managers' guaranteed weekly salaries into their final weekly compensation.

Plaintiffs have not produced any evidence disputing that this is how TSCG processed its payroll. Indeed, they cannot and have actually admitted as much. (SF. 213-14, ¶¶ 83, 85-87). Rather, they point to the fact that their paystubs did not always contain a separate line item for their guaranteed weekly salaries.[5] This is akin to a chef saying that she used salt as an ingredient when cooking a meal and having someone attempt to dispute her on the sole basis that the salt cannot be seen when looking at the final product. Here, Salvucci and Fox both have personal knowledge of TSCG's payroll process; both testified that TSCG did include

---

[5] As Plaintiffs have admitted, the third-party payroll vendor processed the final paychecks to employees without TSCG having any review or control over the information contained on the paystubs. (SF. 213-14, ¶¶ 83, 85-87). Plaintiffs have further admitted that the manner in which the third-party payroll vendor classified the compensation breakdown was not always correct. (*Id.*).

Project Managers' guaranteed weekly salaries in their final weekly compensation; and there is no evidence in the record to the contrary. Thus, it is entirely undisputed that Plaintiffs were always paid their guaranteed weekly salaries.

Moreover, Courts have repeatedly found employees to be paid on a salary basis even though their paystubs do not contain line items identifying their compensation as being paid on a salary basis. *See, e.g. Spradling v. City of Tulsa, Okl.*, 95 F.3d 1492, 1500 (10th Cir. 1996); *Aaron v. City of Wichita, Kan.*, 54 F.3d 652, 658 (10th Cir. 1995); *Coniff v. Vermont*, No. 2:10–cv–32, 2013 WL 5429428, *2 (D. Vt. 2013); *Kulish v. Rite Aid Corp.*, No. 11–3178, 2012 WL 6532414, *3 (D. Md. 2012); *Johnson v. WellPoint, Inc.*, No. 1:06-CV-2430, 2009 WL 8753325, *13 (N.D. Ga. 2009); *Rooney v. Town of Groton*, 577 F. Supp. 2d 513, 524 (D. Mass. 2008); *Cavanaugh v. Southern California Permanente Medical Group, Inc.*, 583 F. Supp. 2d 1109, 1135-38 (C.D. Cal. 2008). Thus, part of Plaintiffs' compensation was indisputably paid on a salary basis.

B. The Reasonable Relationship Test Does Not Apply To Employees, Like Plaintiffs, Covered By The Highly Compensated Exemption

Through Section I.C of their Reply, Plaintiffs reverse the course of their prior arguments, stating for the first time that they "do not take a position" on whether the reasonable relationship test of 29 C.F.R. § 541.604(b) applies to highly

compensated employees like them.[6] (p. 22). Plaintiffs' shifting argument is not surprising given that the Second Circuit Court of Appeals has explicitly held that there is "no cogent reason why the requirements of C.F.R. §541.604 must be met by an employee meeting the requirements of C.F.R. §541.601." *Anani*, 730 F.3d at 149. As Plaintiffs acknowledge, *Anani* held that employees who meet the highly compensated exemption requirements do not *also* need to satisfy the requirements of 29 C.F.R. § 541.604 – precisely as Defendants have argued throughout this case. Thus, the reasonable relationship test of 29 C.F.R. § 541.604(b) is inapplicable to Plaintiffs because, as Defendants have explained at length, they satisfy the requirements of the highly compensated exemption.[7]

For all these reasons, the District Court's grant of summary Judgment to Defendants must be upheld.

---

[6] Section I.B of the Reply focuses on Defendants' contention that the highly compensated exemption has a relaxed compensation standard for determining an employee's exempt status. Yet, Plaintiffs admit – for the first time – that "only part of a highly compensated employee's compensation must be paid on a salary basis." (Reply at p. 8). This is precisely the "relaxed" compensation standard that Defendants have repeatedly argued throughout this case – a standard which Plaintiffs had ignored until now.

[7] Despite Plaintiffs' recent acknowledgment, they still spend several pages of their Reply (pp. 13-17) reasserting the same arguments from their initial Brief (pp. 27-32) that their compensation structure failed to satisfy 29 C.F.R. § 541.604(b)'s reasonable relationship test. The purpose of Plaintiffs' argument is confounding given that test is not applicable here. Regardless, Defendants have previously responded to Plaintiffs' arguments in full through their initial Brief. (pp. 20-23).

## II. The District Court Did Not Abuse Its Discretion In Denying Litz's Motion For Reconsideration[8]

### A. *Dow v. Casale* Supports The District Court's Conclusion That Litz Still Lacked Sufficient Contacts To Maintain A Massachusetts State Law Claim Following *Taylor v. Eastern Connection Operating, Inc.*

Through her Reply, Litz cites to *Dow v. Casale*, 83 Mass. App. Ct. 751 (2013) in an attempt to argue that the District Court erred in holding she lacked sufficient contacts with Massachusetts to maintain a claim under G.L. c. 151, § 1A. However, in *Dow*, the Appeals Court of Massachusetts ("Appeals Court") expressly rejected Litz's contention that an employer's presence in Massachusetts, alone, is sufficient for an employee to maintain a claim under Massachusetts law. 83 Mass. App. Ct. at 756. As the Appeals Court explained:

> Nor do we accept the plaintiff's equally absolute position that an employer's presence in Massachusetts is all that is necessary for an employee – wherever situated and whatever the circumstances of employment – to bring a private right of action against the employer under the Wage Act.

---

[8] As with her initial Brief, Litz has again improperly combined arguments regarding the District Court's Order denying her "Motion to File Second Amended Complaint" ("Motion to Amend") and its Order denying her "Motion for Reconsideration of Order Denying Motion to Amend the Complaint" ("Motion for Reconsideration"). As noted in Defendants' initial Brief (p. 31), these are separate and distinct District Court Orders with differing legal standards which must therefore be reviewed independently. Through Sections II.A and II.B of her Reply, Litz's only arguments relevant to her Motion to Amend are those regarding the statutory language of G.L. c. 151 (pp. 17-18), which she previously asserted in her initial Brief (pp. 38-39) and which Defendants have already addressed through their initial Brief (pp. 37-38). Her remaining arguments were not raised at the time of her Motion to Amend and are therefore limited to analysis of the District Court's Order on her Motion for Reconsideration.

*Id*. Thus, contrary to Litz's assertion, *Dow* directly supports the District Court's conclusion that she lacked sufficient contacts with Massachusetts in order to maintain her proposed claims under Massachusetts law.[9] *Id*.

This conclusion is further underscored when by looking at the underlying facts in *Dow* which demonstrate that the plaintiff there was someone who, unlike Litz, "had more than sufficient 'contacts' with Massachusetts …." 83 Mass. App. Ct. at 752. Yet, in an apparent attempt to twist the *Dow* analysis to fit her needs, Litz *once again* misstates the factual allegations available for the District Court's consideration in ruling on her Motion to Amend and Motion for Reconsideration.

Specifically, Litz now tries to allege that "project managers could have worked in several different locations and only reported to managers based in Massachusetts." (Reply at p. 20). However, there was no such allegation in her proposed Second Amended Complaint ("Proposed Complaint").[10] (A. 36-43). Rather, it only contained a single factual allegation regarding Massachusetts: that TSCG "is a Massachusetts corporation which is headquartered in Massachusetts."

---

[9] Notably, *Dow* was decided after the Massachusetts Supreme Judicial Court ("SJC") issued its opinion in *Taylor v. Eastern Connection Operating, Inc.*, 465 Mass. 191 (2013) – the case upon which Litz based her Motion for Reconsideration. 83 Mass. App. Ct. 751. In fact, the Appeals Court even cited to *Taylor* in *Dow*. *Id*. at 755-56.

[10] Litz's recent assertion is particularly troublesome because she knows that TSCG maintained offices in 10 different states, the District of Columbia, Canada and England and that TSCG's employees reported to their Division Managers at the location of their assigned office. (A. 64-66, 212).

(*Id*.). The Proposed Complaint did not contain any allegations regarding other contacts by Litz or Defendants with Massachusetts and it certainly did not contain allegations that any conduct relevant to this case occurred in Massachusetts. (*Id*.).

The importance of this issue is highlighted when comparing Litz to the plaintiff in *Dow*. While Litz describes the *Dow* plaintiff as "an employee located in Florida, who worked for a Delaware company with headquarters in Massachusetts" (Reply at p. 19), the reality is that he had significant contacts with Massachusetts which were critical to the Appeals Court's decision that he could maintain a claim under the Massachusetts law. 83 Mass. App. Ct. at 753-54.

In *Dow*, the employer maintained *all* of its physical facilities, including its only office, in Massachusetts. 83 Mass. App. Ct. at 753-54. The plaintiff came to Massachusetts on business multiple times each year, usually working from the same cubicle in his employer's office each time.[11] *Id*. He conducted business with customers in Massachusetts and his business cards identified his employer's Massachusetts contact information as his own. *Id*. All paperwork for his sales was generated in Massachusetts.[12] *Id*. His paychecks were issued from Massachusetts. *Id*. He communicated with the employer's CEO in Massachusetts by email daily

[11] As the company's only salesperson, the plaintiff did not have a designated office but was allowed to work from his home in Florida when he was not travelling throughout the country. 83 Mass. App. Ct. at 753-54.

[12] Plaintiff's purchase orders were sent to Mass.; his invoices were sent from Mass.; and his payments were sent to Mass. 83 Mass. App. Ct. at 753-54.

and by telephone several times per week. *Id*. Finally, he had a written employment agreement with his employer which "provided that it 'shall be governed by and interpreted under the laws of the Commonwealth of Massachusetts.'"[13] *Id*.

After analyzing all of the plaintiff's contacts with the state, the Appeals Court affirmed the lower court's decision that he had sufficient contacts with Massachusetts in order to bring a claim under the Massachusetts Wage Act.[14] *Dow*, 83 Mass. App. Ct. at 756-58. However, the Proposed Complaint did not contain *any* similar allegations regarding Litz's contacts with Massachusetts. Rather, the *only* allegation it was that TSCG was headquartered in Massachusetts. As the Appeals Court stated in *Dow*, and as the District Court properly concluded, that allegation alone simply insufficient to maintain a claim under Massachusetts law. 83 Mass. App. Ct. at 756.

---

[13] The Appeals Court stated that, "[a]t a minimum, the choice-of-law provision in Dow's employment agreement is some additional indication that Massachusetts is at the core of the employment relationship." 83 Mass. App. Ct. at 757 n. 12 (internal quotations omitted). Thus, contrary to Litz's contention, the existence of an employment agreement containing a choice of law provision was an important factor in both *Dow's* and *Taylor*'s analyses regarding whether the respective plaintiffs could maintain Massachusetts state law claims. *Id*.; 465 Mass. at 195.

[14] The *Dow* Court also noted that the plaintiff had filed a complaint with the Massachusetts Attorney General – a statutory prerequisite for bringing a claim under the Massachusetts Wage Act. There is no allegation that Litz similarly filed such a complaint before bringing her claims.

B. The District Court's Prior Decision Regarding Litz's Massachusetts Contacts Remains Valid Because *Taylor* Was Not An Intervening Change In Law Affecting The Standard For That Analysis

Through her Reply, Litz argues that the District Court's holding that she lacked sufficient contacts with Massachusetts was irrelevant because she claims that the SJC, in *Taylor*, "set forth a new framework for analyzing choice of law questions in Massachusetts …." (p. 23). However, contrary to Litz's assertion, *Taylor* did not represent an intervening change in law regarding such an analysis. In fact, the SJC explicitly stated that it performed its analysis in *Taylor* by relying on its previously-established principles, stating: "we look to our established 'functional' choice of law principles and to the Restatement (Second) of Conflict of Laws [1971] … with which those principles generally are in accord." 465 Mass. at 195 (quoting *Hodas v. Morin*, 442 Mass. 544, 549 (2004) (quoting *Bushkin Assocs., Inc. v. Raytheon Co.*, 393 Mass. 622, 631-32 (1985)). Thus, Litz's contention that *Taylor* set forth a "new standard" requiring a reconsideration of her contacts with Massachusetts is entirely without merit.

Through its Order on the Motion to Amend, the District Court noted that "there are some situations where Massachusetts law may apply outside its borders if 'sufficient contacts with the Commonwealth exist.'" (A. 90). The District Court then analyzed Litz's contacts with Massachusetts as alleged through the Proposed Complaint and concluded that even if G.L. c. 151 applied outside of

Massachusetts, she *still* did "not have sufficient contacts to add a Massachusetts law claim to her complaint." (A. 90). As the District Court properly noted in its decision on the Motion for Reconsideration, *Taylor's* holding did not affect this analysis. (A. 705-06). Indeed, following *Taylor*, the Appeals Court still rejected the possibility that "an employer's presence in Massachusetts is all that is necessary for an employee – wherever situated and whatever the circumstances of employment – to bring a private right of action against the employer" under Massachusetts law. *Dow*, 83 Mass. App. Ct. at 756. Thus, for all these reasons, the District Court's denial of the Motion for Reconsideration must be upheld.

## **CONCLUSION**

For these reasons, and those set forth in Defendants' initial Brief, Defendants respectfully request that this Court affirm the Judgment of the District Court dismissing Plaintiffs' complaint, affirm the District Court's decisions denying Litz's Motion to Amend and Motion for Reconsideration, and award costs pursuant to Fed. R. App. P. 39.

Respectfully submitted,

THE SAINT CONSULTING GROUP, INC.; P. MICHAEL SAINT AND PATRICK F. FOX

By their attorneys,

*/s/ Sean P. O'Connor*___________________

Robert P. Joy
Court of Appeals Bar No. 17566
Daniel S. Field
Court of Appeals Bar No. 120370
Sean P. O'Connor
Court of Appeals Bar No. 1137121
MORGAN, BROWN & JOY, LLP
200 State Street, 11th Floor
Boston, MA 02109-2605
(617) 523-6666
rpjoy@morganbrown.com
dfield@morganbrown.com
soconnor@morganbrown.com

Dated: September 16, 2014

**CERTIFICATE OF SERVICE**

I hereby certify that on September 16, 2014, the foregoing Sur-Reply Brief for the Defendants/Appellees was filed electronically with the Court, and counsel of record will receive a copy of the foregoing document through electronic notification of such filing.

Shannon Liss-Riordan
John E. Duke
LICHTEN & LISS-RIORDAN, P.C.
100 Cambridge Street, 20th Floor
Boston, Massachusetts 02114

James B. Zouras
Ryan F. Stephan
STEPHAN ZOURAS, LLP
205 N. Michigan Avenue, Suite 2560
Chicago, Illinois 60601

*(s) Sean P. O'Connor*
Attorney for Appellees